## DeLacy *v.* Walcott.

(New York Superior Court—General Term, January, 1893.)

The complaint alleged that plaintiff contributed $10,000 towards securing a franchise for the defendant corporation upon the agreement with defendants that he should receive the same amount of money and stock as the original promoters. He, in fact, received $10,000 in the stock of the company and a writing stating that he was entitled to $10,000 of first mortgage bonds of another corporation. There was no allegation that the original promoters received any stock or money over and above what plaintiff had received, or that they had received anything at all. No allegation of a breach by defendants, or either of them, of the agree-

ment sued on was alleged, nor was there any allegation that what plaintiff received was not equal to whatever the original promoters received. *Held*, on demurrer, that the complaint failed to state a cause of action.

APPEAL from interlocutory judgment overruling demurrer.

The plaintiff, Peter DeLacy, brings this action to compel the specific performance by defendants of an agreement to deliver to him his distributive share of $1,000,000, the capital stock of the defendant Rapid Transit and Bridge Construction Company and the repayment of the sum of $9,500 and other relief. The defendants, Walcott and Rapid Transit and Bridge Construction Company, demurred to the complaint, " on the ground that it appears on the face thereof that the amended complaint does not state facts sufficient to constitute a cause of action." The appeal is from an interlocutory judgment, entered at Special Term, overruling the demurrer.

*Hahn & Myers* (*E. J. Myers*, of counsel), for plaintiff (appellant).

*Lowery, Stone & Auerbach*, for defendants (respondents).

GILDERSLEEVE, J. The first and second paragraphs of the complaint set forth formal matters not necessary to mention here, while the third and fourth and a portion of the fifth set forth the alleged representations made by defendant Alfred F. Walcott as a basis for the agreement in question and inducement to plaintiff to enter therein. In the fifth paragraph, the obligations of defendants created by the agreement are alleged as follows: " The said defendant Alfred F. Walcott promised and agreed, in his own behalf and in behalf of said defendant Rapid Transit and Bridge Construction Company, that if this plaintiff would invest and contribute the sum of ten thousand dollars towards the said sum of one hundred thousand dollars; that said Rapid Transit Company and said defendant Alfred F. Walcott would pay to this plaintiff the same amount of stock and money which the original promoters of said defendant Rapid Transit and Bridge Construction Company should or would receive from said defendant Rapid Transit and

Bridge Construction Company, and that said plaintiff should receive from and be paid by said Rapid Transit and Bridge Construction Company and defendant Alfred F. Walcott an amount equal to whatever the said original promoters received."

From a perusal of the complaint to the end of the fifth paragraph, it appears that defendant Walcott has secured a franchise to build an elevated railroad in Chicago, for which he was to pay, by a certain time, $100,000, or forfeit the franchise. The Rapid Transit and Bridge Construction Company, one of the defendants herein, had been incorporated with a capital of $3,000,000. It had agreed to purchase the franchise and pay therefor $95,000 in cash and $1,000,000 of its capital stock. The defendant Walcott wanted to raise $100,000 to pay to the city of Chicago, and so avoid the forfeiture and make the franchise permanent. The object of the agreement was to obtain from plaintiff $10,000 toward making up the $100,000 required.

The sixth paragraph alleges the authority of defendant Walcott to make an agreement of the character in question that would be binding on defendant Rapid Transit and Bridge Construction Company.

In this discussion, we are not attacking the validity of the agreement, but assume that the transaction was *bona fide,* and that the agreement was as alleged and a valid and binding one upon defendants Walcott and Rapid Transit Company.

In the seventh paragraph, plaintiff alleges that, relying upon the statements and promises as before set forth and induced thereby, he paid defendant Walcott the sum of $10,000, to be used for the purpose of securing and retaining the franchise aforesaid.

In the eighth paragraph, the plaintiff alleges that the whole amount of $100,000 was raised and paid to the city of Chicago for said franchise, and that the franchise so obtained was transferred to the defendant, the Rapid Transit Company, and that said Rapid Transit and Bridge Construction Company assumed and agreed to carry out the promises, agreements and undertakings set forth in the fifth paragraph.

In the ninth paragraph plaintiff alleges that "the defendant Rapid Transit and Bridge Construction Company repaid said guaranty fund, to wit, the sum of $95,000 in cash, and also further issued in payment of said franchise the sum of $1,000,000 in shares at par of the capital stock of said defendant Rapid Transit and Bridge Construction Company." The plaintiff does not state in this paragraph to whom the $95,000 was paid, nor to whom the $1,000,000 in shares of capital stock were delivered.

The tenth paragraph of the complaint sets forth the extent of the interest which the original promoters had in the transaction by alleging that they "were to receive from said Walcott and Rapid Transit and Bridge Construction Company, for the moneys invested by them, $1,000,000 of the capital stock of said defendant Rapid Transit and Bridge Construction Company, and were to be paid, in addition thereto, ninety-five per cent of the amount contributed by them to and invested in said sum of $100,000." It is not alleged when the original promoters were to receive the stock and money; no date or event is named when they would be entitled to claim the same.

The substance of the eleventh paragraph is that said defendant corporation and Walcott issued and delivered in payment of said franchise to defendant Walcott and divers persons, to the plaintiff unknown (who are, therefore, designated as John Doe and Richard Doe), shares of capital stock of said defendant corporation to the amount of par value of the sum of $1,000,000, and paid to the said Walcott and such unknown persons the sum of $95,000 in cash. There is no statement here that the "divers persons," or any of them, constituted the original promoters, or any of the original promoters, or persons who organized said defendant corporation.

The twelfth and last paragraph of the complaint alleges a demand by the plaintiff of the defendant Rapid Transit and Bridge Construction Company and defendant Walcott for the payment of the sum of $95,000 in cash and shares of the defendant corporation to the amount at par value of the sum

of $100,000, being the amount of cash money and shares of stock (what amount or what shares is not stated), but that " said defendants have refused to pay him the said money or deliver to him the said stock, excepting only that they delivered to him 100 shares of the capital stock of the defendant Rapid Transit and Bridge Construction Company of the par value of $10,000, and a paper writing stating that this plaintiff is entitled to $10,000 of the first mortgage bonds of the Chicago and South Side Rapid Transit Company."

The amended complaint fails to set forth a cause of action in favor of the plaintiff, for the reason that it does not allege that the original promoters received any stock or money over and above what had been delivered to the plaintiff. There is no allegation in the complaint of a breach by defendants, or either of them, of the agreement which the action seeks to enforce by compelling a specific performance thereof. It is clear that by the terms of the agreement the plaintiff was to receive from the Rapid Transit and Bridge Construction Company and defendant Walcott an amount of stock and money equal to whatever the original promoters received. This was the promise made to the plaintiff and the inducement upon which he parted with $10,000. No allegation can be found in the complaint that sets forth a breach of this agreement. It is nowhere in the complaint alleged who the original promoters of the said defendant corporation were, or how many there were of them, except that it appears from an examination of the fifth and tenth paragraphs of the complaint that by " original promoters " was meant the persons who organized and exploited the defendant corporation. These were the persons among whom plaintiff was to be an equal. Their respective rights were to determine his. The agreement contemplated a division of the stock and money, and when the division came, plaintiff was to have an amount equal to whatever these persons, called " original promoters," received. But what this amount was the complaint fails to show. Indeed, it does not appear from the complaint that these promoters received anything.

The complaint sets forth the agreement with great clearness and comprehensiveness, but it fails to allege a violation of it by either the defendant Walcott or the defendant corporation. It does not state what promise or obligation, created by the agreement, the defendants, or either of them, failed to perform. There is nothing in the complaint to show that 100 shares of capital stock of the defendant corporation, which the plaintiff acknowledges having received, is not equal to whatever the original promoters received.

It is plain that if the plaintiff has a cause of action, it is because he has not received an amount equal to whatever the original promoters received; and we are of opinion that this cause of action is not set forth in the complaint and that the complaint fails to state any cause of action.

A defendant may learn outside of the complaint what he is sued for, and thus may be ready to meet plaintiff's claim on the trial. He may know precisely what he is sued for, when he receives the summons; yet it is his right to have a complaint from which he can learn what he is sued for, and to insist that it shall state the cause of action which he is called upon to answer.

The interlocutory judgment of the Special Term must be reversed, with costs, and the joint and several demurrer of the defendants, Alfred F. Walcott and Rapid Transit and Bridge Construction Company, to the amended complaint must be sustained with costs, with leave to plaintiff to amend the complaint upon payment of such costs.

FREEDMAN, J. I concur. The action not being for an accounting and the recovery of a balance upon facts to be ascertained, but for the recovery of a definite and specific share, the facts upon which the plaintiff is entitled to such share should have been set forth. The complaint fails to allege sufficient facts for that purpose.

Judgment accordingly.